## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. H-18-709** |
| | ) | |
| DANIEL LERCHBACKER, | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

The United States of America, by and through the undersigned attorney for the Public Integrity Section, Criminal Division, United States Department of Justice, and the defendant, Daniel Lerchbacker (hereinafter, "Defendant"), and Defendant's counsel, Darryl Austin, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count 2 of the Indictment. Count 2 charges Defendant with Conversion, in violation of Title 18, United States Code, Section 641. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

2. Defendant also agrees to voluntarily resign from his current employment with the federal government and terminate his security clearance. In doing so, he further agrees to waive any and all procedures or remedies available to him pursuant to Executive Order, directive, policy, regulation, or law to challenge or appeal (a) the termination of his employment, or (b) any adverse security determination made by the U.S. government concerning Defendant, including the denial or revocation of any security clearance, security approval, or access approval.

## Punishment Range

3. The **statutory** maximum penalty for a violation of Title 18, United States Code, Section 641, is imprisonment of not more than 10 years and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of up to 3 years. *See* 18 U.S.C. §§ 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned up to two years, without credit for time already served on the term of supervised release prior to such violation. *See* 18 U.S.C. §§ 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of $100 per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

5. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney

2

has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Waiver of Appeal and Collateral Review

6. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

7. The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United

States, or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9.  Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

10. The United States agrees to each of the following:

(a)     If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the Sentencing Guidelines, and the offense level prior to operation of Section 3E1.1(a) is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently;

(b)     The United States agrees to recommend a sentence at the low-end of the Sentencing Guidelines; and     and 4     RLM 4/10/19

(c)     The United States agrees to seek dismissal of Counts 1 and 3 through 6 of the Indictment, as to Defendant, after sentencing.

### Agreement Binding - Public Integrity Section Only

11. The Public Integrity Section, Criminal Division, United States Department of Justice agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for

offenses arising from conduct charged in the Indictment.  This Plea Agreement binds only the Public Integrity Section, Criminal Division, United States Department of Justice, and Defendant. It does not bind any other office or component of the United States Department of Justice, including the United States Attorneys' Offices, nor does it bind any state or local authorities.  It also does not bar or compromise any civil, tax, or administrative claim pending or that may be made against Defendant.  Further, this agreement is not intended to provide any limitation of liability arising out of any acts of violence.

### United States' Non-Waiver of Appeal

12.  The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)     to file a pleading relating to these issues, in accordance with Section 6A1.2 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)     to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

13.  Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a).  Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set

for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines.  Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement.

**Rights at Trial**

14.  Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this Plea Agreement.  Defendant understands that the rights of a defendant include the following:

(a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel.  The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree;

(b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant.  Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them.  In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf.  If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court; and

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.  However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea**

15.  Defendant is pleading guilty because he is in fact guilty of the charges contained in Count 2 of the Indictment.  If this case were to proceed to trial, the United States could prove each

6

element of the offense beyond a reasonable doubt.  The following facts, among others would be offered to establish Defendant's guilt:

(a)     During the relevant time, Defendant was a U.S. Customs and Border Protection ("CBP") officer stationed in Toronto, Ontario, Canada. CBP is the largest law enforcement agency of United States Department of Homeland Security, a department of the U.S. government.

(b)     Defendant entered on duty at Toronto Preflight Inspections ("TPI") on or about December 27, 2015, and remained until on or about December 10, 2017. Defendant's family accompanied him to Canada in or about December 2015, and Defendant handled all of the family's finances during his overseas tour.

(c)     CBP employees working at overseas duty stations, like TPI, use Standard Form 1190 ("SF- 1190") to initiate authorization and payment of foreign monetary allowances, including a Living Quarters Allowance ("LQA") and an education allowance. Each SF-1190 requires the employee to affirm that "[t]he information given on this application is true and correct to the best of [his or her] knowledge and belief" and includes a statement, signed by the employee, that the employee is "obligated to notify the authorizing office immediately of any change in conditions which may affect the amount of allowances." Employees are paid foreign monetary allowances through the National Finance Center ("NFC"), a federal agency.

(d)     The LQA is provided "to an employee for the annual cost of suitable, adequate, living quarters for the employee and his/her family." A fixed portion of the LQA is paid directly to the employee each pay period. In addition to a SF-1190 requesting funds to pay for living quarters, employees must submit an LQA Annual/Interim Expenditures Worksheet that includes written estimates of costs, or actual costs if they are known, and supporting documentation.  Separately, the education allowance is intended to assist an employee at a foreign post "in defraying those costs necessary to obtain educational services" for eligible children. Along with any SF-1190 requesting such funds, employees must submit an Education Allowance Worksheet that lists the various reimbursable expenses and indicates the total payment amount requested for a particular school year. Employees who receive the education allowance as lump sum payments must provide "proof of school payment within a reasonable amount of time." If such proof is not provided, the NFC may take action against the employee to collect the funds.

(e)     From on or about January 12, 2016, to on or about September 22, 2017, Defendant submitted SF-1190s for payment of, among other things, private school education expenses for two children and the cost of the lease of his family's residence in Ontario. On each of those forms, Defendant noted the specific purpose of the payment request and provided documentation to justify the requested amount.

(f)     Defendant was paid the full amount of funds that he requested for a two-year Ontario residence lease and for private school education expenses. In total, Defendant received through the SF-1190 process approximately $129,600 Canadian Dollar ("CAD") in LQA and approximately $124,486 CAD in education allowance.

(g)     Despite receiving the full $129,600 CAD requested in LQA from the United States, which corresponded to the rent charged by Company A for the period of February 1, 2016, to February 1, 2018, Defendant owes Company A approximately $20,758.19 CAD in unpaid rent.

(h)     Despite receiving the full amount requested in education allowance from the United States, Defendant owes School A approximately $11,292.80 CAD for unpaid tuition and transportation costs, and owes School B approximately $22,410 CAD for unpaid tuition.

(i)     In total, Defendant has failed to pay the three relevant Canadian entities approximately $54,460.99 CAD, despite having requested and received from the United States the LQA and education allowance funds to pay for those expenses that were already incurred. Of the federal funds received by Defendant from the United States to pay for expenses as part of his LQA and education allowance, Defendant used thousands of dollars on items unrelated to his family's housing or his children's education.

(j)     In order to justify the funds requested and ultimately received, Defendant provided false information to CBP on two occasions. First, on or about August 17, 2016, Defendant wrote a check to School A in the amount of $3,380 CAD for education expenses. That check failed to clear on or about August 24, 2016 due to insufficient funds in Defendant's bank account. The following day, on or about August 25, 2016, a representative of School A emailed Defendant to inform him that the check "you wrote to us in the amount of $3,380 dated August 17th was returned to us." Nevertheless, on or about September 6, 2016, Defendant provided to CBP a copy of that check as proof that he had made the represented payment to School A. Second, on or about April 1, 2017, Defendant wrote a check from his TD Canada Trust ("TD") account to School A in the amount of $22,800 CAD for tuition. That check failed to clear on or about April 24, 2017 because Defendant's account had previously been closed. On or about April 26, 2017, a representative of School A emailed Defendant to inform him that the check "did not clear at the bank." Defendant responded by email and noted that he "actually stopped banking with TD." Nevertheless, on or about May 5, 2017, Defendant provided to CBP a copy of that check as proof that he had made the represented tuition payment to School A.

(k)     On or about July 7, 2017, the TPI Field Office informed Defendant that the Houston Field Office approved his requested reassignment to Houston, Texas. On or about July 20, 2017, approximately two weeks after being notified of his early December 2017 departure, Defendant submitted an SF-1190 requesting payment of education allowance, which expressly included the spring 2018 semester, for one of his children to attend School B.

Two months later, on or about September 22, 2017, Defendant submitted an SF-1190 requesting payment of education allowance for the child's transportation expenses, which expressly included the spring 2018 semester.

(l)     As a result of these SF-1190s submitted by Defendant, Defendant was paid the approximately $48,461 CAD that he requested for the full 2017-2018 school year. This amount included approximately $24,230.50 CAD for spring 2018 tuition that was never used because Defendant's children only attended private school in Canada for the fall 2017 semester. Defendant has not returned the spring 2018 education allowance funds.

(m)     In the final few months prior to leaving Canada, between on or about September 11, 2017, and on or about December 7, 2017, Defendant made approximately 37 large cash withdrawals from automated teller machines, totaling approximately $35,000 CAD.

**Breach of Plea Agreement**

16.  If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand.  If at any time Defendant retains, conceals, or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.  Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

17.  This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

9

18.   Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this Plea Agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

19.   Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

20.   Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

21.   Defendant agrees to pay full restitution to the victims regardless of the count of conviction. Specifically, Defendant agrees to a broader restitution obligation that that of Count Two, including restitution for all of the conduct charged in Counts One, Two and Three of the Indictment. Defendant stipulates and agrees that as a result of his criminal conduct, the victims incurred a monetary loss of at least $61,414.99 USD for victims Company A, School A, School B, and the United States. Defendant understands and agrees that the Court will determine the

10

amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

## Forfeiture

22. Defendant stipulates and agrees that Defendant obtained at least $28,765.58 USD from the criminal offense charged in Count Two and that the factual basis for his guilty plea supports the forfeiture of $28,765.58 USD. Defendant agrees to the imposition of a personal money judgment in that amount. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists, and Defendant agrees to forfeit any of Defendant's property in substitution, up to a total forfeiture of $28,765.58 USD.

23. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

24. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

25. Subject to the provisions detailed above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

## Fines

26. Defendant understands that under the Sentencing Guidelines, the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the

11

Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions detailed above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

27. This written plea agreement, consisting of 13 pages, including the attached addendum of Defendant and his attorney, constitutes the complete Plea Agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this Plea Agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

28. Any modification of this Plea Agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on ___April 10_____, 2019.

_____
Defendant

Subscribed and sworn to before me on ___April 10_____, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

AnnaLou Tirol
Acting Chief

By: _____
Rebecca Moses
Trial Attorney
Public Integrity Section
Criminal Division

_____
Darryl Austin
Attorney for Defendant

13

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. H-18-709 |
| | ) | |
| DANIEL LERCHBACKER, | ) | |
| Defendant. | ) | |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the Court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this Plea Agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _____
Attorney for Defendant                                Date

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this Plea Agreement with my attorney. I understand this agreement, and I voluntarily agree to its terms.

_____          _____
Defendant                                            Date

14